**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **ADDIEL SOTO-FELICIANO,**<br><br>    Plaintiff,<br><br>        v.<br><br>**VILLA COFRESI HOTELS, INC., ET. AL.,**<br><br>    Defendants. | CIV. NO. 10-2082(PG) |

**OPINION AND ORDER**

Plaintiff Addiel Soto Feliciano (hereinafter "Plaintiff" or "Soto") filed this action pursuant to the Age Discrimination in Employment Act ("ADEA" or "the Act"), 29 U.S.C. § 623, against his former employer Villa Cofresí Hotels, Inc., ("VCH" or "the Hotel") and Sandra Caro (collectively referred to as "Defendants"), alleging discrimination on the basis of age and retaliation for engaging in protected conduct. See Docket No. 1. Specifically, Soto claims that he was suspended and terminated because of his age and in retaliation for complaining of age discrimination.[1] See id. The Plaintiff also pleads supplemental state law claims for age discrimination under Puerto Rico's anti-discrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, *et seq.*, and Puerto Rico's wrongful termination statute, Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. LAWS ANN. tit. 29, § 185, *et seq.*.

Before the Court is the Defendants' Motion for Summary Judgment (Docket No. 22) and Plaintiff's Opposition thereto (Dockets No. 24-25). After a close examination of all the evidence on record and a careful review of the applicable statutory and case law, the Court **GRANTS** the Defendants' motion for summary judgment for the reasons explained below.

**I. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which allows disposition of a case if "the pleadings, depositions, answers to interrogatories, and admissions on file,

---

[1] At the time of his dismissal, Plaintiff alleges he was forty-six years (46) of age. See Docket No. 1 at ¶ 8.

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Sands v. Ridefilm Corp., 212 F.3d 657, 660 (1st Cir.2000). A factual dispute is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case. See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir.2004).

To be successful in its attempt, the moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact in the record, see DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir.1997), through definite and competent evidence. See Maldonado-Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir.1994). Once the movant has averred that there is an absence of evidence to support the non-moving party's case, the burden shifts to the non-movant to establish the existence of at least one fact in issue that is both genuine and material. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990) (citations omitted). If the non-movant generates uncertainty as to the true state of any material fact, the movant's efforts should be deemed unavailing. See Suarez v. Pueblo Int'l, 229 F.3d 49, 53 (1st Cir.2000). Nonetheless, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). However, "summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990).

At the summary judgment juncture, the Court must examine the facts in the light most favorable to the non-movant, indulging that party with all possible inferences to be derived from the facts. See Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir.2002). The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id.

## II. FACTUAL FINDINGS

Before setting forth the facts found by this Court to be undisputed and relevant to the matter at hand, we must first address several compliance

CIV. NO. 10-2082(PG)                                                          Page 3

issues presented to the court when reviewing Defendants' and Plaintiff's statements of facts.

"Documents supporting or opposing summary judgment must be properly authenticated." Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir.2000) (citing FED.R.CIV.P. Rule 56(e)). To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). See 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 2722 (3d ed.1998). "Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Hoffman v. Applicators Sales And Service, Inc., 439 F.3d 9, 14 (1st Cir.2006). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Id. "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." Robinson v. Bodoff, 355 F. Supp. 2d 578, 582 (D.Mass.2005) (striking all exhibits that were submitted without affidavits).

After a careful review of the record, the court found that Exhibits 1 and 2 to the Defendants' statements of uncontested fact, which were respectively a memo of suspension and the memo of termination, lacked an authenticating affidavit. However, the court will consider these exhibits in the disposition of the pending motion to the extent the Plaintiff agreed to stipulating the same, see Docket No. 31.

The court also found that many of the portions of the Plaintiff's deposition testimony that the parties' cited to in support of proposed statements of fact were simply unintelligible. In addition to the constant interruptions between deposing attorney and the Plaintiff, the latter mostly spoke in incomplete sentences or phrases. Moreover, the multiple interjections and filler words that the Plaintiff utilized made some of his answers to the deposition questions incomprehensible to this court. As a result, the court did not consider the proposed factual statements that were supported by portions of the Plaintiff's deposition testimony, which, despite much effort, we could not understand.

Finally, Local Rule 56(c) states that "[a] party opposing a motion for summary judgment shall … shall support each denial or qualification by a record citation as required by this rule." Local Rule 56(e) then states that "[f]acts contained in a supporting or opposing statement of material facts,

CIV. NO. 10-2082(PG) Page 4

if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Taking these rules into consideration, the court finds that the Plaintiff failed to properly deny many of the facts set forth by the Defendants. In response to the Defendants' statements of fact, the Plaintiff repeatedly responded as follows:

> Denied. It is Plaintiff's [sic] contention that at the time of his dismissal there had not been any event in which Plaintiff had been admonished because of being slow at the cooking line or that anyone had a complaint about his work. Exhibit 2 at page 108 L8-13; 108 L14-19. The only time that plaintiff was admonished was on February 18, 2010 when Ms. Sandra Caro called him to a meeting in which she told Plaintiff "I understand that you are old to work at the cooking line and that your co-workers are also saying that you are old to work at the line." Exhibit 2 page 72 L12- 25; 91 L13-20; 95 L16-19; 96 L10-14. In the February 18, 2010 meeting Ms. Sandra Caro told Plaintiff "You are no longer capable to work at the line because you are old." Exhibit 2 page 72 L12- 25; 91 L13-20; 95 L16-19; 96 L10-14. In the February 18, 2010 meeting Ms. Sandra Caro told Plaintiff that he was slow. Exhibit 2 page 96 L10-14. In the February 18, 2010 meeting Ms. Sandra Caro told Plaintiff that she was going to bring in a new chef. Exhibit 2 pages 72 L12- 25; 91 L13-20. In the February 18, 2010 meeting Ms. Sandra Caro told Plaintiff you need some long vacations. Exhibit 2 pages 73 L1-7; 91 L13-20.

See Docket No. 25. The above-cited paragraph, or some mildly modified version of it, appears over fifteen times in the Plaintiff's opposing statement of material facts. See id. The same is used to deny or qualify many of the Defendants' purported facts, even when it doesn't address the content of the moving parties' original statement. What is more, in support of this opposing statement, the Plaintiff cites to portions of his deposition where he states that no previous complaints had been lodged as to his lack of speed in the cooking line; however, this assertion is belied by other segments of his own deposition testimony in which he describes incidents with his supervisors where they asked him to hurry up or expressed some other complaint about his work. See Docket No. 31-1 at pages 39, 41, 43-45. As a result, the court will deem admitted all statements of fact that are supported by record citations and improperly denied or not denied at all.[2]

---

[2] To the extent the Defendants did not file a reply statement of material facts, the court shall also deem as admitted all of Plaintiff's proposed statements of fact that were supported by the record citations.

CIV. NO. 10-2082(PG)                                                    Page 5

Despite the foregoing, the Court found the following relevant facts were undisputed:

1. Defendant Sandra Caro is the General Manager in charge of Banquet and Human Resources of the Hotel since May 1996.
2. The Hotel is owned by the Caro family.
3. Sandra Caro's sister, Rita M. Caro Caro, is the General Manager in charge of Front Desk, Purchasing and Customer Service.
4. Hector Mendez, Sandra Caro's husband, is the Hotel Food and Beverage Manager.
5. Fernando Caro Caro, Sandra Caro's brother, is the General Manager in charge of Finance.
6. David Caro Caro, Sandra Caro's brother, is the Night Manager.
7. Hector Perez-Velez ("Perez-Velez") is the Restaurant and Kitchen Manager at the Hotel, and is supervised directly by Hector Mendez and the Caro siblings.
8. The Hotel is a family business where no formal structure exists as to supervisory line and reporting of employees.
9. The Hotel follows progressive discipline in order to discipline its employees. The disciplinary process that the Hotel follows is that they begin with a verbal warning. The verbal warnings are documented. As a second step in the disciplinary process the Hotel gives a written memo. All verbal warnings are put in writing and they go into the personnel file of the employee. The verbal warning is put in the employee file either by Sandra Caro or by Evelyn Caro, the Human Resources Supervisor.
10. Plaintiff Soto started working for the Hotel on 2003.
11. By January of 2010, Soto was the head Chef of the Hotel's kitchen and reported directly to Perez-Velez, Hector Mendez or any one of the Caro siblings.
12. In January of 2010, the Hotel had two cooks, namely, Jesus Vargas and Carlos Rosado, working at the kitchen.
13. Plaintiff admits to having been verbally admonished for not being in on time or for something done or left dirty in the kitchen. See Docket No. 31-1, pages 62-63.
14. Plaintiff admits to saying bad words while working in the kitchen. See Docket No. 31-1, page 58.
15. According to David Caro Caro, the Night Manager at the Hotel, clients attending the restaurant at the Hotel complained to him on several

      occasions that someone in the kitchen was using profane language in a loud tone of voice that could be heard in the dining room.

16. Plaintiff admits to having been asked to lower his voice and be careful with what he said because it was being overhead outside [the kitchen]. See Docket No. 31-1, page 62.

17. According to Perez-Velez, the Restaurant and Kitchen Manager at the Hotel, and Sandra Caro, the Plaintiff exhibited a negative attitude towards work.

18. According to David Caro-Caro and Perez-Velez, when the waiters asked the Plaintiff to rush the orders, the Plaintiff would usually answer the waiters to come and prepare the dish themselves.

19. According to Perez-Velez, when he reprimanded the Plaintiff for his use of profanity or his bad attitude at work, Soto would answer back in a profane and loud voice making Perez-Velez feel threatened.

20. According to David Caro-Caro, he received numerous complaints from the waiters and from clients that had to do with Soto.

21. According to Sandra Caro, the Plaintiff's performance at the food line was decreasing by the year 2010.

22. Plaintiff admittedly got into arguments with supervisors and co-workers after being reprimanded for being slow, for not being attentive in the kitchen and for screaming. See Docket No. 31-1, pages 39; 41; 43-45.

23. At one point, Sandra Caro told the Plaintiff that there had to be better communication in the kitchen.

24. On February 18, 2010, Sandra Caro held a meeting with the Plaintiff in her office at the Hotel. She met with the Plaintiff because of his constant use of profanity in the kitchen.

25. Sandra Caro did not document the verbal admonishments given to Plaintiff for his use of profanity. See Docket No. 25-2 at page 38.

26. Sandra Caro and the Plaintiff were alone during this conversation. Sandra Caro explained to Plaintiff that he had to be careful when he made comments about other waiters and their religious beliefs because they might feel discriminated. Sandra Caro was referring to a discussion that Plaintiff had with a waiter, where the waiter asked not to be given meat on Ash Wednesday because he was Catholic and thus did not eat meat that day. Plaintiff made a joking remark about that and asked the waiter if he was stupid because, although he did not eat meat on Ash Wednesday,

      he drank a lot of beer. The waiter complained about those comments to David Caro-Caro, the supervisor.

27. Sandra Caro also expressed to Plaintiff during the meeting that she had complaints about him taking longer to prepare the meals and asked him to explain what the problem was. Plaintiff responded that he felt burned out, that working in the kitchen can be stressful, that the heat and the volume of work could get to be much.

28. During this meeting, Sandra Caro told Plaintiff that he was slow.

29. Sandra Caro asked Soto to tell her if he needed a vacation or help in the kitchen or to work fewer hours.

30. On February 25, 2010, Plaintiff went to the Puerto Rico Department of Labor ("PRDL") and Puerto Rico Anti-Discrimination Unit ("PRADU") to request orientation pertaining to his rights under the laws.

31. Plaintiff informed Evelyn Caro and Luis Lopez that he had gone to the Puerto Rico Department of Labor to seek orientation about his rights as an employee.

32. On February 28, 2010, the four Caro siblings, Hector Melendez and Hector Perez-Velez met with the Plaintiff.

33. During this meeting, Plaintiff was told to narrate what had happened with Sandra Caro on February 18, 2010.

34. In the meeting of February 28, 2010, Plaintiff told Rita Caro that he went to the Department of labor to ask for counseling.

35. On his next day of work, March 2, 2010, Plaintiff was handed a disciplinary memorandum signed by Rita Caro and Sandra Caro stating that he was suspended from work and pay until March 15, 2010.

36. The memo detailed the reasons for Soto's suspension, among them, creating a hostile work environment with his negative attitude and use of profane language in the workplace, threatening Hector Perez-Velez on February 27th, 2010, and showing insubordination towards his supervisors during incidents on February 23rd and 26th, 2010, respectively. Specifically, Soto told Sandra Caro over the phone on February 23, 2010 that he didn't have anything to talk with her after she told him she needed to speak to him and told Perez-Velez on February 26, 2010 that if he needed the fish, to peel it himself. See Docket No. 22-3.

37. When receiving the suspension letter, Plaintiff never complained or expressed that his suspension was a pretext and that the real reason was age discrimination.

38. When he received the suspension letter, Soto wrote that he was not in agreement with the manner in which some of the comments he made were said or written in the memo.
39. On March 10, 2010, Plaintiff received a letter signed by Rita Caro and Sandra Caro terminating his employment for the same reasons that led to his suspension. See Docket No. 22-3.
40. After Soto's employment termination, the Hotel was in need of someone performing the duties that he was performing while he worked as Head Chef. Thus, his duties where divided between Jesus Vargas, Perez-Velez and Hector Mendez.

### III. DISCUSSION
### A. Age Discrimination in Employment Act
#### 1. Suspension and Termination

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir.2009) (quoting 29 U.S.C. § 623(a)(1)). The Supreme Court recently clarified that, regardless of whether direct or circumstantial evidence is used to support an ADEA claim, and of whether a burden-shifting analysis is employed by the court, plaintiffs must "establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009). The Court declared in Gross that this "but-for" standard is a much higher standard than that which has been applied in Title VII cases. Id. Notwithstanding, there is no "heightened evidentiary requirement" for plaintiffs to satisfy their burden of persuasion through "direct evidence" as opposed to "circumstantial evidence." Id. at 2351 n. 4. The rule is simply that "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Id. (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143, 147 (2000)).

In the absence of direct or "smoking gun" evidence, ADEA plaintiffs may nonetheless prove their cases by using the three-stage burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Melendez v. Autogermana, Inc., 622 F.3d 46, 50 (1st Cir.2010). The first stage of the McDonnell Douglas framework requires a

plaintiff to establish a prima facie case of employment discrimination, which requires a showing that the plaintiff-employee: (1) was at least forty (40) years old at the time of the adverse employment action complained of; (2) his/her job performance met or exceeded the employer's legitimate expectations; (3) that his/her employer actually or constructively discharged him/her [or subjected him or her to other adverse employment actions]; and (4) that his/her employer had a continuing need for the services he/she had been performing. See Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 48 (1st Cir.2008). "This prima facie showing is not especially burdensome, and once established, gives rise to a rebuttable presumption that the employer engaged in intentional age-based discrimination." Autogermana, 622 F.3d at 50 (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir.1995)).

In its motion for summary judgment, the Defendants contend that Soto is unable to establish the second and fourth prongs of a prima facie case of discrimination inasmuch as his job performance was not meeting the Hotel's legitimate expectations and he was not replaced by someone younger. See Docket No. 22. The Defendants submit that the Plaintiff's bad attitude towards his supervisors and fellow co-workers, his use of foul language in the kitchen, his insubordination towards his supervisors, and the Ash Wednesday incident he had with a waiter disqualified him for the job. See Docket No. 22-1 at pages 14-15.

"When determining whether an employee's performance met the employer's legitimate expectations, "an employee's perception of himself is not relevant. Rather, it is the perception of the decision maker which is relevant."" Navedo v. Nalco Chemical, Inc., 848 F.Supp.2d 171, 193 (D.P.R. 2012) (citing Torrech–Hernandez v. Gen. Elec. Co., 519 F.3d 41, 49 (1st Cir.2008). Nevertheless, the First Circuit Court of Appeals has consistently held that "we cannot "consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case."" Autogermana, 622 F.3d at 51 (citing Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir.2003)). See also Thermo King, 585 F.3d at 448 (finding as error that the district court "accepted for the purpose of the prima facie analysis [the employer's] stated reason for firing [the plaintiff] as proof that he was not qualified for the … job"). That is exactly what the Defendants are attempting to do at this stage, namely, proffering the reasons the Plaintiff was suspended and terminated as the grounds for his lack of qualifications for the job.

CIV. NO. 10-2082(PG)                                                    Page 10

At any rate, as grounds of his allegation that he was qualified for the job, Soto responds that he was not notified of any performance problems by the time of his suspension and subsequent dismissal, and none was documented in his employee file in his almost seven (7) years of employment. See Docket No 24 at pages 11-12. And while the Plaintiff admits during depositions that his supervisors called his attention to some behavioral problems, "this falls far short of proving that he has failed to meet his employer's legitimate performance expectations." Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 49 (1st Cir.2008). Although the Defendants now criticize the Plaintiff's performance claiming he was generally slow, had a bad attitude and used profane language, the Defendants failed to document their criticism prior to the adverse action complained of. This despite Sandra Caro admitting to the fact that all reprimands, including verbal, become a part of the employee record in accordance with Hotel policy. Other than his final suspension and termination memo, "there is no documentation evidencing [Defendants'] dissatisfaction with plaintiff's performance, no evaluations, memoranda, or any other written indication that plaintiff was not performing up to par." Machin v. Leo Burnett, Inc., 376 F.Supp.2d 188, 200 (D.P.R. 2005). Therefore, "[b]ecause only a minimal evidentiary showing is necessary to satisfy an employee's burden of production at this stage, it cannot be said that [plaintiff] did not set forth at least minimally sufficient evidence to overcome summary judgment on this prong of the test." Torrech-Hernandez, 519 F.3d at 49.

The Defendants also contend that Soto cannot establish the fourth prong of the applicable test because he was not replaced by someone younger, and in fact, that he has yet to be replaced. See Docket No. 22-1 at page 15. The Plaintiff responds, however, that he has established the fourth and final element because it is uncontested that the Hotel is still in need of someone performing the duties of his position and these were divided among other employees. See Docket No. 24 at page 7. The court agrees with the Plaintiff. In a non-reduction in force case, such as Soto's, a plaintiff "can meet his burden by showing that his "job functions were absorbed by several different employees of defendant."" Burdick v. Fuller Box Co., Inc., No. 02-245T, 2003 WL 21692107 at *6 (D.R.I. July 16, 2003) (citing Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 334 (1st Cir.1997)).

Having found that the Plaintiff is able to show the elements of a prima facie case of age discrimination, the court must then move on to the next

stage of analysis. As the First Circuit set forth in Thermo King, and in Autogermana, once the plaintiff establishes a prima facie showing of age-based discrimination, the Court proceeds as follows:

> The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decisions. If the employer articulates such a reason, the McDonnell Douglas framework - with its presumptions and burdens - is no longer relevant. At this stage, the sole remaining issue is discrimination *vel non*. A plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. Ultimately, the plaintiff's burden is to prove that age was the but-for cause of the employer's adverse action.

Thermo King, 585 F.3d at 447-48 (internal quotation marks and citations omitted).

For purposes of the dispositive motion before the Court, "[t]he ultimate question on summary judgment in [an] ADEA case is whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired **because of** his age." Id. at 452 (internal quotation marks and citations omitted) (emphasis ours). "Evidence establishing a prima facie case, in combination with evidence of pretext, can be sufficient to defeat summary judgment if a rational factfinder could conclude that unlawful age discrimination was the actual, but-for cause of the discrimination." Id. (citations omitted).

In support of their decision to suspend and terminate the Plaintiff, the Defendants adduce to a series of events that led to both decisions. According to the Defendants, the Plaintiff had been verbally admonished throughout the course of his employment because of his bad attitude, use of profane language in the workplace and for being slow. After the incident with the waiter on Ash Wednesday, Sandra Caro met with Soto and verbally admonished him on February 18, 2010. Shortly after this meeting, several incidents took place where the Plaintiff threatened his supervisor Hector Perez-Velez and showed insubordination and bad attitude towards his supervisors by refusing to speak to Sandra Caro after she called him on the phone and telling his supervisor Hector Perez-Velez that if he wanted some fish, to peel it himself. See Docket No. 22-3. On February 28, 2010, the four Caro siblings, Hector Melendez, Hector Perez-Velez met with the Plaintiff, and discussed Soto's performance and his meeting with Sandra Caro. On March 2, 2010, the Plaintiff was

suspended from work and pay. Before the end of his suspension, Soto was fired on March 10, 2010. According to the termination memo, he was terminated for the same reasons he was suspended, which were the incidents that took place after his meeting with Sandra Caro, in addition to creating a hostile environment with his negative attitude. See id.

In his response, the Plaintiff concedes that "[c]learly Defendants in this case have met their task of articulating an alleged legitimate nondiscriminatory reason for Soto's termination." Docket No. 24 at page 8. However, the Plaintiff responds that Sandra Caro called him "old" and "slow" during the meeting she had with him on February 18, 2010. See id. According to Soto, these discriminatory comments demonstrate that the Defendants' reason for terminating his employment are a pretext for age discrimination.[3] See Docket No. 24. Although Sandra Caro admits telling Plaintiff he was slow during this meeting, she denies calling him old. See Factual Findings No. 28, *supra*; Docket No. 22-2 at ¶ 24. Consequently, the Plaintiff argues that a factual controversy of material facts exists that prevents the entry of summary judgment. See Docket No. 24.

We now turn to the determination of whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus. We then reach ""the third and final phase of burden-shifting," at which point "the *McDonnell Douglas* framework falls by the wayside."" Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir.2012) (citing Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir.1991)). "The court's focus now turns to "the ultimate issue," which is whether—after assessing all of the evidence on the record in the light most favorable to [plaintiff]—"[he] has raised a genuine issue of fact as to whether the termination of [his] employment was motivated by age discrimination."" Acevedo-Parrilla, 696 F.3d at 140 (citations omitted). "In order to meet this

---

[3] In his response to the Defendants' motion for summary judgment, the Plaintiff attempts to bolster his claim of age discrimination by claiming that his supervisor, Hector Perez-Velez, also called him "slow" and "old." See Docket No. 25 at ¶ 25 at page 12, ¶ 37 at page 16. However, in his complaint, Soto only alleged that Sandra Caro called him "slow" and "old." See Docket No. 1 at ¶ 28. It is the law of this court that "summary judgment is not a procedural second chance to flesh out inadequate pleadings." Fleming v. Lind-Waldock & Co., 922 F.2d 20, 24 (1st Cir.1990). "This Court will not entertain any attempts to amend the complaint by adding underdeveloped claims in a response to a motion … ." Torrente-Leyva v. Capitol Sec. Police, Inc., No. 10-1550, 2011 WL 5977468 at *3 n. 1 (D.P.R. November 29, 2011) (internal citations omitted).

burden, "[plaintiff] must offer some *minimally sufficient* evidence, direct or indirect, both of pretext and of [defendants'] discriminatory animus."" Id. (citations omitted).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 662-663 (1st Cir.2010) (citing Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997)). In addition, evidence of age-related comments could support an inference of pretext and discriminatory animus, particularly if the comments were made by the key decisionmaker. See Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir.2000); see also Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 35-36 (1st Cir.2001) (holding that in combination with other evidence, so-called "stray remarks" may permit a jury in an employment discrimination action reasonably to determine that an employer was motivated by a discriminatory intent). The weight of such remarks, however, is circumscribed if they were made in a situation temporally remote from the date of the employment decision or if they were not related to the employment decision in question or were made by nondecisionmakers. See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 301 (1st Cir.1998); see also Acevedo-Parrilla, 696 F.3d at 144 ("[I]n evaluating such remarks made by a decisionmaker, this court has considered their temporal proximity and causal connection to the decision to discharge.").

In the case at hand there is a factual disagreement as to whether or not Sandra Caro, a decision maker with regards to Soto's employment, called him "old" during a meeting where she reprimanded him just two weeks prior to his suspension. According to Plaintiff, he was alone with Sandra Caro when she allegedly made the ageist remark in question and she did this on only one occasion. The court must thus determine whether on its own, this remark is sufficient to sustain Soto's burden on summary judgment to raise an issue of fact as to whether the Defendants' reasons for his suspension and termination are pretextual and are "intended to cover up the employer's real motive: age discrimination." Acevedo-Parrilla, 696 F.3d at 143 (citations omitted). In essence, we must determine whether the employer's statements concerning Soto's insubordination are a pretext designed to mask discrimination.

CIV. NO. 10-2082(PG)                                                    Page 14

Notwitshtanding, the court is mindful that its role is not to "second-guess the business decisions of an employer, nor to impose [its] subjective judgments of which person would best fulfill the responsibilities of a certain job." Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 31 (1st Cir.1990). "Courts may not sit as super personnel departments, assessing the merits - or even the rationality - of employers' nondiscriminatory business decisions." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 823 (1st Cir.1991).

In the case at hand the court finds that while this alleged ageist remark is temporally proximate to the Plaintiff's suspension and termination, it was not causally connected to the Defendants' decision to suspend and terminate Soto. Even after assessing all of the evidence on the record in the light most favorable to Soto, we are unable to find that the proof he has set forth is sufficient to raise a question of material fact regarding whether the *true and but-for* reason behind his suspension and termination was age discrimination. The court thus holds because it is a matter of record that between the meeting where he claims Sandra Caro called him "old" and his suspension, the Plaintiff engaged in two different incidents of insubordination and one incident of threats towards his supervisors. Moreover, in support of their decision to suspend and terminate the Plaintiff because of his shortcomings at work, the Defendants attached sworn testimony of three of Plaintiff's supervisors, namely, Sandra Caro, Hector Perez-Velez and David Caro Caro, attesting to his multiple deficiencies. See Docket No. 22. In addition, the Plaintiff has admitted to having been verbally reprimanded during the course of his employment for these same deficiencies. Finally, Soto also failed to deny the incidents that took place between his meeting with Sandra Caro and his suspension and and merely responded that the same were "taken out of context," Docket No. 24 at page 11.

"As we have often found, insubordination is obviously sufficient to support an adverse employment action." Pearson v. Massachusetts Bay Transp. Authority, --- F.3d ----, 2013 WL 3507785 at *4 (1st Cir.2013) (citing Windross v. Barton Protective Servs., Inc., 586 F.3d 98, 104 (1st Cir.2009) (collecting cases)). "In assessing pretext, a court's "focus must be on the perception of the decisionmaker," that is, whether the employer believed its stated reason to be credible." Mesnick, 950 F.2d at 824 (citations omitted). Not only has Soto failed to deny the incidents that the Defendants claim brought about his demise, but also failed to set forth evidence that they did

not actually believe the stated reasons, to wit, his insubordination, to be real.

In light of the foregoing, the court hereby finds that the Plaintiff has not carried his burden to prove that age discrimination was the but-for cause of his suspension and dismissal from the Hotel. See Cruz v. Bristol-Myers Squibb Co., PR, Inc., 699 F.3d 563 (1st Cir.2012) ("To prevail on an ADEA claim, an employee must establish by a preponderance of the evidence that age was the but-for cause of his or her termination."). Accordingly, the Defendants' motion for summary judgment with regards to the Plaintiff's claim that he was suspended and terminated because of his age in violation of ADEA is hereby **GRANTED**.

### 2. Retaliation Claim

Plaintiff also makes a retaliation claim under the ADEA alleging that he was terminated after complaining of Sandra Caro's discriminatory treatment because of his age. See Docket No. 1 at ¶ 69. In their motion for summary judgment, the Defendants simply state, without more, that the Plaintiff "does not have the require [sic] evidence to establish any retaliation against him. He only states in his complain [sic] that he was retaliated but never establishes how, when or where." Docket No. 22-1. In addition, the Defendants suggest that the Plaintiff did not complain of retaliation in his charge before the PRADU or the EEOC. See id. In response, Soto claims that a court should treat all acts of retaliation as simply another form of discrimination. See Docket No. 24 at page 19.

"To bring suit in a district court for retaliation or discrimination under the ADEA, Plaintiff is required to file an administrative charge with the EEOC." Jusino v. Sears Roebuck of Puerto Rico, Inc., No. 13-1138, 2013 WL 3821608, at *3 (D.P.R. July 23, 2013) (citing 42 U.S.C. § 626(d); Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir.2005)). The fact that Soto timely filed a complaint with the EEOC before bringing suit in federal court is not in dispute. What the court understands that the Defendants are attempting to argue, however, is that the administrative charge failed to include allegations of retaliation. To that effect, all that is required is that "the judicial complaint … bear some close relation to the allegations presented to the agency." Morales–Cruz v. Univ. of P.R., 676 F.3d 220, 223 (1st Cir.2012) (quoting Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir.2005)). By failing to attach the administrative charge as part of the exhibits to their motion for summary judgment, the Defendants have failed to place this court in a position

CIV. NO. 10-2082(PG)                                                    Page 16

to rule on the matter. Accordingly, their motion for summary judgment must be denied on grounds that the Plaintiff failed to properly exhaust administrative remedies.

The Defendants also argue in their motion that the Plaintiff was not retaliated against, but instead he was discharged because of his deficiencies at work. See Docket No. 22-1 at pages 17-18. In response, the Plaintiff argues that he was suspended and terminated only days after he complained of age discrimination to the Caro siblings. See Docket No. 24 at page 19.

"In addition to prohibiting age discrimination, the ADEA also protects individuals who invoke the statute's protections." Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir.2005) (citing 29 U.S.C. § 623(d)) ("It shall be unlawful for an employer to discriminate against any of his employees … because such individual … has opposed any practice made unlawful by this section, or … made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.") Where there is no direct evidence of retaliation, the plaintiff may proceed to establish a prima facie case that closely tracks the McDonnell Douglas framework: the plaintiff must show that (1) he engaged in ADEA-protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and adverse action. Id.; see also Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir.2007) (noting that at a bare minimum, this requires an employee to make a "colorable showing of a causal connection" between his protected activity and the adverse employment action).

"Once a prima facie case is delineated, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision." Mesnick, 950 F.2d at 827 (citations omitted). "If this is accomplished, the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA." Id. "Whatever the sources of his proof, a plaintiff, in order to survive judgment as a matter of law, must present evidence from which a reasonable jury could infer that the employer retaliated against him for engaging in ADEA-protected activity." Id. at 828 (citing Petitti v. New England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir.1990); Williams v. Cerberonics, Inc., 871 F.2d 452, 458 (4th Cir.1989)).

It is uncontested that, after meeting with Sandra Caro on February 18, 2010, Plaintiff went to the Puerto Rico Department of Labor and Puerto Rico Anti-Discrimination Unit on February 25, 2010 to request an orientation. According to Soto, he informed Evelyn Caro and Luis Lopez of this fact. Plaintiff also claims he told Rita Caro that he went to the Department of labor to ask for counseling during the meeting of February 28, 2010 with his supervisors where the situation with Sandra Caro was discussed. Then, on his next day of work, March 2, 2010, Plaintiff was handed a disciplinary memorandum signed by Rita Caro and Sandra Caro wherein they informed him of his suspension from work and pay until March 15, 2010. Eight days later, on March 10, 2010, Plaintiff received a letter from Rita Caro and Sandra Caro terminating his employment for the same reasons that led to his suspension. Therefore, it is uncontested that the Defendants suspended and terminated Plaintiff merely days after complaining of age discrimination with his superiors and at the PRADU.[4] In his brief, the Plaintiff relies on this temporal proximity to establish the required causal link element of his prima facie case. See Docket No. 24.

"Where the evidence shows only that the decisionmaker knew of the complainant's protected conduct at the time the adverse employment action was taken, causation may be inferred from a very close temporal relationship between the protected activity and the adverse action." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 72 (1st Cir.2011) (citations omitted). See also Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close," … ."). Notwithstaning the foregoing, the First Circuit Court of Appeals has consistently held that "[c]hronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" Ramirez Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 85 (1st Cir.2005) (citing Wright v. CompUSA, Inc., 352 F.3d 472, 478 (1st Cir.2003)).

---

[4]The Defendants maintain that Sandra Caro did not become aware the Plaintiff had filed a charge of discrimination until after he was suspended. See Docket No. 22-2 at ¶ 27. However, the court did not deem this fact uncontroverted because the Defendants failed to attach the portion of Sandra Caro's deposition that grounded this statement.

CIV. NO. 10-2082(PG) Page 18

As discussed in the previous section, it is also a matter of record in this case that on February 18, 2010, Sandra Caro met with Plaintiff to reprimand him for disrespecting a waiter, for using profane language in the kitchen and for being slow. And although Soto claims he complained to his supervisors that Sandra Caro called him "old" after this meeting, there is also evidence before that court that during the days between this meeting and his suspension, Soto threatened his supervisor Hector Perez-Velez and engaged in two additional incidents of insubordination and bad attitude towards Sandra Caro and Perez-Velez. This despite having been reprimanded by Sandra Caro of his deficiencies at work. Therefore, we find that the record as a whole paints a picture of insubordination sufficient to undercut Soto's claim of causation, and thus, he falls short of establishing a prima facie case of retaliation under ADEA.

At any rate, even if this court were to rule that the Plaintiff satisfied the required elements of a prima facie case of retaliation, Soto is unable to demonstrate retaliation in a way sufficient to leap the summary judgment hurdle. As discussed in the previous section, the court has already found, and the Plaintiff conceded, that the Defendants articulated a legitimate nondiscriminatory reason for his termination. In turn, the only evidence the Plaintiff has proffered to suggest that Defendants' actions were a pretext for retaliation is the temporal proximity between his complaints of discrimination and his suspension and termination. The First Circuit Court of Appeals had held that temporal proximity of an employee's protected activity to an employer's adverse action is a source of circumstantial evidence that, *theoretically*, can demonstrate retaliation in a way sufficient to leap the summary judgment hurdle. See Mesnick, 950 F.2d at 828. Notwithstanding, the evidence of temporal coincidence is not enough to thwart *brevis* disposition. Contrary to what the Plaintiff posits, the record read as a whole is more consistent with the Defendants' theory that the Plaintiff was suspended and terminated for engaging in insubordination and the type of conduct for which he had been reprimanded just days prior. And the Defendants' alleged knowledge that Soto was pursuing an age discrimination claim in the PRADU, without more, is not itself "sufficient to take a retaliation case to jury." Mesnick, 950 F.2d at 828.

> To be sure, [the employer] knew, at the time [plaintiff] was dismissed, that he was pursuing an age discrimination claim. But, that kind of knowledge on an employer's part, without more, cannot itself be

> sufficient to take a retaliation case to the jury. Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint. We agree with the Eighth Circuit that, while statutes such as the ADEA bar retaliation for exercising rights guaranteed by law, they do "not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir.) (Title VII case), *cert. denied*, 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988). In the absence of proof sufficient to create a jury issue regarding retaliation, courts should not use cases involving unsupported reprisal claims to police the wisdom, fairness, or even the rationality of an employer's business judgments.

Id. at 828-829.

Much like in Mesnick, the Defendants have set forth proof of the Plaintiff's negated confrontational attitude, contentiousness with his peers and supervisors, and disregard for management direction. The evidence presented by Soto does not create a triable issue of fact as to the Defendants' retaliatory animus. Therefore, we hereby **GRANT** the Defendants' request that the Plaintiff's retaliation claims under ADEA be dismissed.

**B. Supplemental State Law Claims**

The remainder of Plaintiff's claims are grounded on Puerto Rico law. The Defendants have not argued in favor or requested the dismissal of these claims. Since the federal claims have been dismissed and no other grounds for jurisdiction exists, the court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining state-law medical malpractice claims. See Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (explaining that the exercise of pendent jurisdiction is a matter of the federal court's discretion and not one of plaintiff's rights); United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (stating "if the federal claims are dismissed before trial, … the state law claims should be dismissed as well."). Accordingly, the Plaintiff's claims brought pursuant to Commonwealth law are hereby **DISMISSED WITHOUT PREJUDICE.**

### IV. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendants' motion for summary judgment (Docket No. 22). Accordingly, Plaintiff's claims for discrimination and retaliation under ADEA are hereby **DISMISSED WITH PREJUDICE.**

The Plaintiff's claims brought pursuant to Commonwealth law are hereby **DISMISSED WITHOUT PREJUDICE.** Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, September 9, 2013.

S/ JUAN M. PEREZ-GIMENEZ
JUAN M. PEREZ-GIMENEZ
U.S. DISTRICT JUDGE
